The first issue is whether the petitioner established that the harm he suffered in India, an account of his religious beliefs and political affiliations, rose to the requisite level so as to warrant a finding of past persecution, or in the alternative, the more stringent humanitarian harm. This one, according to the record, started out with your client approaching some people who had, he said, said some bad things against the Sikh religion. And he was trying to get them to stop preaching their religion. They didn't like that. So they had some words. They roughed him up. He went to the police. They said, look, if this happens again, it's a religious dispute here, but if it happens, let us know and we'll help you. So then the second time, those same people apparently found him on the street. And again, it was a religious argument. Now, normally, in these kind of cases, we get situations where somebody just unprovoked attacks. But in this case, he was the one who was the person who started the, in quotes, fight. How does that rise to the level of persecution in the immigration law context? I'd like to clarify that the record established that he didn't fight. The immigration judge found his testimony to be credible. So he and his friends confronted the Dara Sathya Sathya group members. I'll refer to them as DSS for convenience. In a polite and non-aggressive manner, their reaction did not reflect how the same level of politeness is. Moreover, the second arm against him was completely unprovoked. So let's take those facts as true. I guess there's two questions in my mind. One is, how do we review the IJ's determination that this didn't arise to the level of persecution? Don't we have to find that no reasonable person could find anything but that it was persecution? Well, certainly we reasonable ---- Substantial evidence standard, right? Yes. And so we — why does the record compel the conclusion that — and you must only be talking about the second incident, because the first one wasn't persecution. So why does the record compel the conclusion that one confrontation with angry people is persecution? Perhaps if it was in a vacuum, it wouldn't be. However, this Petitioner returned to the police following their instructions and requesting help, an investigation, maybe ---- No, that — that — that — going to the police goes to the separate issue I wanted to ask you about, which is whether there's government acquiescence or government involvement in this conduct. I'm looking at the first part. So you've got one beating, let's call it a beating, take it in the light most favorable to your client, on the street by somebody that he's angered. Why are we compelled to the conclusion that that incident arises to the level of persecution? Because the basis for the harm was a religious basis. I'm — I'm — I'm perfectly with you on the notion that it was because of his religious or political beliefs. Not everything that happens to you because of your religious and political beliefs arises to the level of persecution. So my question is, why are we compelled to the conclusion, contrary to the IJ, that this incident, single incident, arises to the level of persecution? As I was saying before, because the police act the DSS. Yeah, and see, what we're missing each other is I think the police protection could establish government acquiescence in the beating. I'm not sure it does, but let's assume that it does. I'm still focusing on the incident. Why does this one incident compel us to the conclusion that your client was being persecuted? Because the petitioner asserts that the DSS held a position of power that was akin to a governmental power, so that when they attacked him for his religious beliefs, it wasn't just the DSS, a private entity, some offshoot of Sikhism, but it was a group that also held political clout. So — So with respect, the DSS was a splinter, limited group. It was your client that belonged to the majority religion that was in power. This is a tiny little offshoot. Your client said, you know, please don't use the loudspeaker. Please don't say anything bad about my religion. And that's where they got in the problem. But as my colleague points out, it's hard to see — this is not an employment situation. It's not a question of power. It's simply some people in a splinter group getting in a fight with your client. And they don't have any more power in the sense that I think you're talking about than your client does. Indeed, if anybody had some power, it would be him because he is an adherent to the majority in actual physical control of Punjab. So how do we deal with this? If I may add, the background documents show that the Mon Party was not in power at the time. I believe the Congress Party was in power. And the DSS — In the country overall?  And the DSS, as you say, splintered away from Sikhism. And many Sikhs supported the Shirmani Akali Dalman Party, which advocated for a separate Sikh state. The DSS did not. The authorities favored those groups that did not support splintering off to a separate state. And that's why we argued they would protect the DSS or the DSS would have exerted some power. I'm not claiming, but just say for a minute you're right. My colleague asked, the key question here is, what evidence compels us to find that the IJ's finding was wrong here? What is it? Well, in many asylum claims before this Court, private actors instigate the harm against an applicant. And the Court would find, nevertheless, that the harm the applicant suffered rose to the requisite level. We don't argue that the DSS was not a private group. No. And I'm willing — let's make the case easier for you. Let's assume exactly the same thing happened and the police arrested your client and beat him up. So we have clear government action. One incident, one incident of police misconduct, does that compel a finding of persecution, or is it up to the IJ to discern on the facts whether it arises to the level of persecution? Of course, the IJ has a level of discretion and can make that determination of a particular facts of an applicant's claim rise to the level. However, no case law indicates that there is a minimum number of attacks or incidents of harm that an applicant has suffered. No, but we have said one beating may not be enough. The IJ can look at it and say it's a terrible thing, but it doesn't arise to the level of persecution. I think Wackery says that. So what are the facts here that compel us, notwithstanding our case law, to find that this arises to the level of persecution? Well, first, the words of the attackers of the DSS that clearly showed that the reason that he — that the applicant Petitioner was being attacked was due to his religious beliefs. And later, the actions of the police that clearly showed that they supported that kind of — Counsel, with respect, you're not answering my colleague's question. He's saying, what's the persecution here? Our case law says that as horrible as it is, a single, in quotes, beating is not enough sometimes. That's what you got here. You got one. The beating was severe, and it was coupled with death threats. And those two things have been found by this very court on multiple occasions to constitute persecution. Do you want to save any of your time? It's up to you. My 32 seconds. Your 32 seconds. Exactly. May it please the Court, Christopher Buchanan for the United States of America, who does not survive the substantial evidence standard because the Petitioner cannot establish that the record of evidence compels either that the severity of harm was sufficient to qualify as persecution or that the police — both of those are fatal to his claims, and the Court should deny. You're representing the Attorney General, actually, right? Yes, sir. Not the United States? Yes, Your Honor. Okay. Just wanted to make that clear. Can I ask you — I thought we had cases that were pretty clear that being beaten into unconsciousness was a severe enough form of harm to constitute persecution. I'm thinking most recently of Parada, just from last year we said that. That is what happened to the Petitioner here. He was hospitalized for two weeks as a result. I thought our case law was pretty clear that that's plenty severe enough to rise the level of persecution. What's your response to that? Persecution, as Your Honor is well aware, is a very fact-intensive inquiry. And so the — there is no per se rule that simply says, well, if you have been beaten severely, then you are automatically considered to have suffered harm rising to that level. Instead, grounding facts are very important. And so, for example, here in this case, while it's true that the Petitioner was beaten and it's true that he awoke from an unconscious state and was hospitalized, it is also true that he was found to be young and in good health and able to find employment in the immigration judge's relocation finding. And so — Well, stop there, because you veered off — way off the question I asked. The relocation finding is an alternative ground that the IJA offered that the BIA didn't reach, so we can't rely on that. It might well be supported on remand. But I'm just talking about the being beaten until you're unconscious and being hospitalized for two weeks somehow does not rise to the level of the severity of harm necessary to constitute persecution. I'm just not finding any support in our case law for that proposition. Your Honor, that is a direct result from the standard of review. The record must compel the conclusion that the harm was so severe as to constitute persecution. And so, in the after a lifetime of discrimination, even cumulatively, didn't establish a requisite level of harm. And so the rule is not that — the rule is that it's fact-intensive. And here, while beaten, the record also establishes facts that he was young and in good health. And the two are in some tension in the sense that — going to Your Honor's question, which is, what about the essence of the beating, the harm itself? Is that not severe enough? And where the agency has found that it is not, the burden is on — So do you think the age of the petitioner makes a difference? So if I'm young and strong and I'm beaten with sticks, that's not persecution, but if I'm old and frail, it is? Your Honor, it's just one of many relevant factors. Well, I'm asking whether it's relevant. I think it is, Your Honor, because it goes to — it would — I think that if we change the facts in this case, it is easy to see how results — different results might accrue. Well, but I'm — I guess my question is, why is his age and health relevant to the issue of persecution? Well, if the — if — well, to come at it a different way, if the beating resulted in unconsciousness, for which the evidence showed that there was a long-term debilitating effect, there was some cognitive impairment, there was an inability to function in some way that had been taken away from the petitioner as a result of the harm, same harm, different results. Age may be a factor in that. See, I understand how the harm factors into the cat determination, because some harms don't rise to the level of torture. But I'm not sure why the harm from a beating is relevant to the notion of persecution. Is there a case that says that? Your Honor, the Galli case makes clear that not every form of mistreatment that's used — Oh, and I agree. I agree. That's not my question. My question is, is there a case that says something which might be persecution when done on a — on a strong — on a weak person is not persecution when done on a strong person? Your Honor, I don't have a case that says that explicitly. I can't — I'm unaware of one. I — no, I simply point out to the age, because that's a fact found in this case that's not in dispute. And so I think that is relevant to the question. Can you address the issue of government acquiescence? Because it's obvious the government didn't inflict the harm here. Tell me — tell me — the I.J. found that there wasn't government acquiescence. As I read the BIA decision, it agreed. Yes, Your Honor. Tell me why that's supported by substantial evidence. Well, the — as this Court has already observed, the — of the two encounters with the police — It's only the second one we care about. That's correct. That's exactly right. And there, the — this record — the evidence is that he asked for assistance, the police solicited a bribe, and then he left. That's the conclusion of the inquiry. It's a very limited inquiry. There's no — there is no further indication of how bribery works on the ground in the Punjab, in that area. And again, records — record evidence must compel the conclusion that the police are — And that's the only evidence that we're focusing on in police acquiescence is them saying, I'll investigate it if you bribe me, more or less. Those aren't the exact words, but — That's correct, Your Honor. Nothing else on that — on the acquiescence issue in the record? No, Your Honor. I think it's — I think it's limited to just that — that finding based solely on that encounter. And this Court's case law — and I'm thinking of the — of the Farouk case and the Afriye case. The Court has encountered fact patterns wherein there is a bribe levied against an applicant in exchange for police activity of some sort. And the analysis has always been more than simply that a bribe was levied. So there is no per se rule that says if a bribe is levied, then automatically the police are unwilling. And that makes sense because the bribe itself is inherently — it's fluid. It's an inherently fluid impediment. Maybe they will, maybe they won't, unclear. And so the record evidence surrounding the levying of the bribe was critical. For example, in the Afriye case where in the state of Ghana bribery was a national practice and the petitioner established that regardless of the bribe, which I think was actually paid in that case regardless, the police would not have acted because they never investigated crimes of interreligious violence. Your friend was talking about who controlled government, who was politically powerful. Is there any evidence in this record that might support the notion that a bribe was demanded because the DSS faction was in control of government in some way? Your Honor, you have to dig pretty deep to find any kind of connection there. It is clear from the exchange between the police and Singh that political opinion was not an offing. They didn't — it didn't come up as a topic. Mere corruption, in your view, isn't police acquiescence? Well, pecuniary gain kind of here is the only motive that this evidence, that this record presents, and that certainly falls short of government acquiescence. Well, I'm not clear on the government's position or the Attorney General's position here. So you're saying that the police can be deemed willing and able to help someone if they condition their help on the payment of a bribe that the person isn't able to afford? That's the position of the United States government? No, Your Honor. The — as always, removal was conceded here. This is only about whether the petitioner has met their burden to establish relief. And for that, Singh must establish that the police are unwilling to assist on these facts and not get there. But why? He says that I went to them for help, and they said, we won't help unless you pay us — I can't remember, I've got $25,000-something, whatever the amount was. Yes. And it was beyond his means, and so therefore he walked away without assistance. Yes, but what's important, though, is the context. So there is, before the court, not just this single exchange where the cops are looking for money. There is the larger context where bribery is a base of in India, but at the same time the Indian government has taken active steps to confront, to undermine and limit the act. I think in this record we have evidence that the Indian government has fined something in the order of 40,000 police officers over a period of two years for violating laws established specifically to confront and prevent and punish corruption. I'm sorry, I didn't mean to interrupt you, to finish your thought. Must there be a nexus between the police unwillingness and the protected ground? Your Honor, my understanding is that the protected — the nexus is between the harm. The harm must be inflicted on account of a protected ground. Right. But, yeah, that's clear. My question is, what if the police are equal opportunity corrupt? We'll take money from anyone to investigate it. Your religion doesn't matter. Does that establish acquiescence, or could that establish acquiescence? I think it's much more difficult in that circumstance to do so. I think it's much easier for an applicant when they can point to a bribe in a context like — We only ask for bribes from Sikhs. But if they ask for a bribe and they are working for a government that is specifically set up to suppress an ethnic minority, so that's the Farood case, then all of a sudden the bribe takes on an extra level of imminent harm because the police there are looking as — they look very much like actors who are — who might be veering towards persecution themselves. Counsel, your time is up. Let me ask my colleagues, do either have more questions? No, I don't. All right. Thank you very much for your argument. So, petitioner's counsel has a little time left. That's not one case. Does there have to be a nexus, as my colleague questioned, does there have to be a nexus between the willingness of the police to help and the reason, in this case, why your client was persecuted? In other words, do they have to say, well, because it's a religious issue, we won't help? I don't believe there should be such a nexus because just the fact that the police are unwilling or unable, you cannot seek government protection against those who are harming you on a nexus. Very good. Other questions? Thanks to both of you. The case just argued is submitted. We will now hear argument in the second argued case of the day, which is Corgan v. Kima.
judges: M. Smith, Watford, Hurwitz